01

02

03

04

05

06                       UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON

07                           AT SEATTLE

08  JANET J. HENRIKSON,         )   CASE NO. C09-1071-MAT
                             )

09       Plaintiff,          )
                             )

10       v.               )   ORDER RE: SOCIAL SECURITY
                             )   DISABILITY APPEAL

11  MICHAEL J. ASTRUE, Commissioner )
of Social Security,           )

12                             )
       Defendant.        )

13  _____  )

14       Plaintiff Janet J. Henrikson proceeds through counsel in her appeal of a final decision of

15  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16  denied plaintiff's applications for Childhood Disability Benefits (CDB) after a hearing before

17  an  Administrative  Law  Judge  (ALJ).    Having  considered  the  ALJ's  decision,  the

18  administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

19                 **FACTS AND PROCEDURAL HISTORY**

20       Plaintiff was born on XXXX, 1945.[1]  She earned a Certificate of Completion from

21

22       1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal
Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -1

01 Ballard High School in lieu of a diploma.  (AR 154, 174.)  After completing a program in

02 Basic Skills at the Occupational Guidance Center in 1965 (AR 175), she worked in an assembly

03 job with mostly handicapped employees from 1965 to 1967 (AR 85, 116, 150, 506).  Her

04 minimal work history also includes employment as a busgirl in 1969, a preschool assistant in

05 1974, and a housekeeper from at least 1975 to 1976.  (AR 85, 115-23, 240.)

06 　　　　Plaintiff applied for Social Security Income (SSI) in October 1976; this application was

07 denied based on her capacity to perform substantial gainful activity (SGA).  (AR 123, 127.)

08 Her subsequent June 1988 SSI application was approved, based on personality disorder,

09 unspecified mental retardation, and epilepsy.  (AR 17, 127, 238, 243, 265-66, 477-78.)  Her

10 SSI benefits were affirmed following a continuing disability review in June 2003, based on

11 personality disorder and borderline intellectual functioning.  (AR 17, 216, 224.)

12 　　　　Plaintiff filed an application for Disability Insurance Benefits (DIB) and CDB in July

13 2006, with a constructive application date of October 1976 to match her original SSI

14 application.  (AR 14, 88.)  She alleged disability began October 1, 1966, based on mental

15 impairments and seizure disorder.  (AR 53, 149.)  Her application was denied at the initial

16 level and on reconsideration, and she timely requested a hearing.

17 　　　　On January 6, 2009, ALJ Verrell Dethloff held a hearing, taking testimony from

18 plaintiff and from plaintiff's sister Joyce Jackson.  (AR 496-532.)  On February 13, 2009, the

19 ALJ issued a decision finding plaintiff not disabled.  (AR 14-22.)

20 　　　　Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review

21

22 Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial
Conference of the United States.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -2

01  on June 10, 2009 (AR 6-10), making the ALJ's decision the final decision of the Commissioner.

02  Plaintiff appealed only the final CDB decision of the Commissioner to this Court.

**JURISDICTION**

04      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

06      To qualify for CDB, a claimant must be 18 years or older, and be found disabled before

07  age 22.   42 U.S.C. § 402(d)(1), 20 C.F.R. § 404.350(a)(5).   Plaintiff's alleged age of onset is

08  October 1, 1966—prior to XXXX, 1967, which is the date she attained age 22.   20 C.F.R. §§

09  404.2(a)(4), 404.102.

10      The Commissioner follows a five-step sequential evaluation process for determining

11  whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920.   At step one, it must be

12  determined whether the claimant was gainfully employed between the alleged onset date and

13  the date she attained the age of 22.   The ALJ found plaintiff had not been so engaged.

14      At step two, it must be determined whether a claimant suffers from a severe impairment.

15  The ALJ found the medical evidence failed to establish the existence of a medically

16  determinable impairment prior to the date plaintiff attained age 22.   Therefore, the ALJ found

17  plaintiff not disabled, and did not consider steps three through five.   *See* §§ 404.1520(c),

18  416.920(c).

19      This Court's review of the ALJ's decision is limited to whether the decision is in

20  accordance with the law and the findings supported by substantial evidence in the record as a

21  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

22  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -3

01 reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881

02 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which

03 supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278

04 F.3d 947, 954 (9th Cir. 2002).

05        Plaintiff argues that the ALJ erred by failing to call a medical expert to assist in

06 determining the onset date, and by failing to properly credit lay testimony and special education

07 records which establish disability. The Commissioner argues that the decision should be

08 affirmed because the ALJ applied the correct legal standards and the decision is supported by

09 substantial evidence.

10 SSR 83-20

11       The bulk of plaintiff's arguments derive from Social Security Ruling (SSR) 83-20,

12 which states the policy and describes the relevant evidence to consider when establishing the

13 onset date of disability. According to SSR 83-20:

14 In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the

15 medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the

16 established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

17 …

18 In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the

19 date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a

20 disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis.

21 At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file

22 indicating that additional medical evidence concerning onset is available, such

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -4

01        evidence should be secured before inferences are made.

02        If reasonable inferences about the progression of the impairment cannot be
          made on the basis of the evidence in file and additional relevant medical
03        evidence is not available, it may be necessary to explore other sources of
          documentation. Information may be obtained from family members, friends,
04        and former employers to ascertain why medical evidence is not available for the
          pertinent period and to furnish additional evidence regarding the course of the
05        individual's condition… The impact of lay evidence on the decision of onset
          will be limited to the degree it is not contrary to the medical evidence of
06        record…

07        The available medical evidence should be considered in view of the nature of the
          impairment (i.e., what medical presumptions can reasonably be made about the
08        course of the condition). The onset date should be set on the date when it is most
          reasonable to conclude from the evidence that the impairment was sufficiently
09        severe to prevent the individual from engaging in SGA (or gainful activity) for a
          continuous period of at least 12 months or result in death. Convincing rationale
10        must be given for the date selected.

11        The Ninth Circuit Court of Appeals has held that, where the evidence concerning the

12   onset date is not definite and medical inferences must be made, SSR 83-20 requires the ALJ to

13   obtain the services of a medical expert and "to obtain all evidence which is available to make

14   the determination." *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991). *Accord Morgan*

15   *v. Sullivan*, 945 F.2d 1079, 1082 (9th Cir. 1991) (making an informed inference where the date

16   of onset of a mental impairment is ambiguous "is not possible without the assistance of a

17   medical expert.") In *Armstrong v. Commissioner of the Soc. Sec. Admin.*, 160 F.3d 587,

18   589-90 (9th Cir. 1998), the Ninth Circuit confirmed its ruling in *DeLorme* that the term

19   "'should'" in SSR 83-20, in referring to calling a medical expert, meant "'must.'" The Court

20   concluded that, because it was unclear when the plaintiff's various impairments in that case

21   became disabling, the ALJ erred in failing to call a medical expert to aid in determining the

22   onset date. *Id*. *See also Quarles v. Barnhart*, 178 F. Supp. 2d 1089, 1096 (N.D. Cal. 2001)

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -5

01 ("The ALJ in this case erred as a matter of law when he did not call a medical advisor, but

02 instead inferred, based on the dates of medical treatment, that the onset date of Quarles'

03 "currently established severe emotional disorders" was not prior to Quarles' DLI.")

04       The ALJ concluded that it was not necessary to call a medical expert under SSR 83-20:

05     Absent objective medical evidence, the claimant's symptoms alone cannot
    establish the existence of a medically determinable physical or mental
06     impairment. An impairment must result from anatomical, physiological, or
    psychological abnormalities that can be shown by medically acceptable clinical
07     and laboratory diagnostic techniques. Thus, regardless of how genuine the
    claimant's complaints may appear to be, when there are no medical signs or
08     laboratory findings to substantiate the existence of a medically determinable
    physical or mental impairment that could reasonably be expected to produce the
09     claimant's symptoms, a finding of not disabled is required at step two of the
    sequential evaluation process.

10

11     The claimant testified that she [sic] learning difficulties and took medication for
    seizures (the last time she had a seizure was in November 1972). She had been
    told that she was mentally retarded; she had done poorly in school.

12     …

13     Turning to the evidence of record, the claimant's only childhood medical reports
    concern treatment for a skin rash and childhood medical problems. There is
14     one cryptic reference to "attacks" in June 1958, February 1959, and July 1961; a
    reference to an "attack" that was "Grand Mall" (sic) is noted in June 1972.
15     None of these reports described symptoms of mental impairments, but the
    1958-1961 reports suggest that the claimant possibly had three seizures between
16     age [sic] 13-16. It is uncertain just who prepared this particular report,
    however, and it appears to be a recollection rather than a medical report.

17

18     The next report is from October 1976 by Ralph Gregg, M.D., stating that the
    claimant was significantly limited by epilepsy since treatment began in 1970.
19     In a June 2003 report, the claimant reported that her seizures had begun after an
    injury when 8 years old. But in August [1988] R. Ferguson, M.D., reported that
20     he treated the claimant for seizures since November 1977, and that her seizures
    had begun 3-4 years before that. Her symptoms were completely controlled on
21     Dilantin. This suggests that claimant did not have seizures again prior to 1973
    or so, long after her 22nd birthday.

22     IQ testing in 1988 showed that the claimant had a VIQ of 74, PIQ of 87, and

01    FSIQ at 80.  In June 2003 she demonstrated that she could read and write.
Other reports do not mention BIF [borderline intellectual functioning] or
02    retardation.  Those reports raise a possible inference that she had borderline
intellectual functioning, or low average cognitive ability, prior to reaching age
03    22.  But there is no significant evidence consistent with that possibility.

04    The balance of the medical evidence does not discuss symptoms and functioning
until decades after the relevant time period.  And there is nothing in any of
05    these records that refers to the relevant time period, or can be extrapolated back.

06    Turning to other evidence, the claimant's aunt reported that the claimant had
been developmentally disabled since childhood.  A family friend recounted
07    statements from the claimant's father about her emotional limitations.  He
included his own observations, albeit many years after the relevant time period
08    at issue.  At the hearing, the claimant's sister testified that the claimant was
"different" as a young girl; she had learning problems, emotional outbursts, and
09    she was unable to manage simple math functions until she was much older.

10    School reports show that the claimant graduated from high school with a
"certificate," and was trained in a course of basic skills.  A 1934 graduate
11    school thesis is submitted apparently to show that "adjustment and
pre-vocational classes" were designed for mentally retarded children.  The
12    relevance of that to the claimant is tenuous.  She apparently attended Pacific
Pre-vocational School, and had good grades in her course of study.
13
In April 2007 a DDS reviewer concluded that there was insufficient information
14    to make a disability determination for the claimant on and before December 31,
1968, the date she was last insured, and extrapolating her later symptoms to her
15    functioning at age 22 would not support disability in light of her reported
educational achievement and work history.  These assessments are consistent
16    with the paucity of evidence as discussed above.  I did not call a medical expert
because the medical evidence is insufficient for an expert witness to draw a
17    sustainable, supportable inference.  The purpose of medical expert testimony in
remote onset cases under Social Security Ruling 83-20 is to resolve ambiguities
18    in the evidence pertaining to onset date, not allow speculation to fill voids in the
medical evidence.  That conclusion is supported by the DDS assessments.
19
The claimant indicates that she has been found disabled due to a number of
20    impairments.  She has anxiety and a personality disorder, but those
impairments can vary over time and cannot be extrapolated back to 1967, when
21    she reached age 22.  She insinuates that because later findings show lower IQ
levels, because she has been found disabled due to these symptoms, at least in
22    part, and because she attended a school for children with learning or other

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -7

01    cognitive problems, that she <u>must</u> have been disabled prior to age 22.

02    But as stated above, there is no clinical record to support her assertions.
      Accordingly, there were no medical signs or laboratory findings to substantiate
03    the existence of a medically determinable impairment through the date last
      insured, and through the date that the claimant turned 22 years of age.
04    …

05    This is not one of the "some cases" referenced by SSR 83-20.  The Ninth
      Circuit has recognized that retroactive opinions can be problematical [sic],
06    indicating that rejection of the opinion of a psychiatrist one and a half years after
      the date last insured was reasonably rejected as remote.[2]

07

08    (AR 16-19; internal citations omitted.)

09        Plaintiff contends that the ALJ erred by not calling a medical expert to assist in inferring

10    the age of onset for her established disabling impairments, as required by SSR 83-20.   As both

11    plaintiff and the Commissioner state, her medical records prior to age 22 are scant.   The

12    Commissioner argues that SSR 83-20 does not apply because a medical expert would have no

13    basis to draw an inference on whether the impairments became disabling prior to age 22.   In

14    support of this argument, the Commissioner urges this Court to follow the holding of a recent

15    unpublished decision from this Circuit:

16    Although Greenway was found disabled in 1988 for purposes of receiving
      Supplemental Security Income benefits, the basis for that disability finding is
17    not in the record. Greenway argues that because he was later diagnosed with
      schizophrenia in the mid-to-late 1990s, the ALJ was required to consult a

18    ──────────────────────

19        2 As plaintiff argues, the case cited by the ALJ regarding the problematic nature of
      retroactive opinions, *Lombardo v. Schweicker*, 749 F.2d 565, 567 (9th Cir. 1984), does not
20    address SSR 83-20 or the necessity of calling a medical expert to infer the date of onset.
      Indeed, as discussed above, the policy of SSR 83-20 is to actively solicit a retroactive opinion
21    from a medical expert under certain circumstances.   As in *Lombardo*, the retroactive nature
      might affect the weight the ALJ gives to the opinion—a claimant must still fulfill the burden of
22    proof—but it does not relieve the ALJ of his duty to call a medical expert when required by SSR
      83-20.  *See id.*

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -8

01 medical expert to determine the onset date of his schizophrenia. As discussed
02 above, however, Greenway's limited medical records from 1978-1980 do not contain medical evidence supporting a diagnosis of schizophrenia, and there are no medical records available for Greenway from between 1980 and 1996.
03 Greenway himself testified that he did not receive any treatment for mental illness from at least 1980 to 1988. Thus, the administrative law judge was not
04 required to call a medical expert because there were insufficient medical records from which a medical expert could reasonably have drawn the conclusion that
05 Greenway's onset date was prior to the date on which his insurance lapsed in 1982.

06

07 *Greenway v. Astrue*, No. 08-35964, 2009 WL 4191842, at *1 (9th Cir., Nov. 4, 2009).   In the

08 past, this Court utilized a similar approach in analyzing these types of cases:

09 SSR 83-20 advises that a medical expert be called and other sources of evidence explored only where it would be reasonable to infer that the onset date of a
10 disabling condition occurred some time prior to the date of the first recorded medical examination/the date the claimant stopped working.   Also, as
11 construed by the Ninth Circuit, SSR 83-20 necessitates that a medical expert be called only where the evidence as to onset date is ambiguous.   Accordingly,
12 whether or not SSR 83-20 applies only where an individual has been deemed disabled at some point in time, the ALJ's decision should stand if it can be said
13 that substantial evidence supports the conclusion that it was not reasonable to infer an onset date prior to the date of the first recorded medical examination/the
14 date the claimant stopped working, and that the evidence as to onset date is unambiguous.

15

16 *Ritzma v. Barnhart*, No. C05-1609-JCC-MAT, Report and Recommendation (Dkt. 26) at 9

17 (W.D. Wash., May 10, 2006).

18 Substantial evidence supports the ALJ's finding that there is insufficient evidence for a

19 medical expert to reasonably infer the onset of a disabling impairment before plaintiff attained

20 age 22.   In other words, because the record is not ambiguous as to whether the onset of a severe

21 impairment occurred before age 22, a medical expert is not required to assist in making an

22 inference.   As referred to by the ALJ, Dr. Eisenhauer, Dr. Peterson, and Dr. Bernandez-Fu all

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -9

01   concluded in respective 2007 DSHS reviews that there was insufficient evidence to determine

02   whether plaintiff had a disabling impairment prior to age 22. (AR 184-97, 231-34.) Dr.

03   Peterson specifically considered plaintiff's education and work history in his opinion. (AR

04   231.) As mentioned above, plaintiff was denied SSI benefits in October 1976—nine years

05   after she attained age 22—based on her capacity to perform SGA. (AR 123, 127.)

06        Plaintiff references a number of medical records that she claims support a life-long

07   cognitive impairment. She states that, absent evidence to the contrary, a person's IQ is

08   presumed to remain stable over time. *Maresh v. Barnhart*¸ 438 F.3d 897, 899 (8th Cir. 2006).

09   She references 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C), which requires "[a] valid

10   verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental

11   impairment imposing an additional and significant work-related limitation of function" to meet

12   the listing for mental retardation. However, this argument works against plaintiff, as her only

13   IQ scores in the record place her IQ above the upper limit allowed for any section in listing

14   12.05, including 12.05(C). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05(B), (C),

15   (D). Plaintiff also points to the use of the word "organicity" by the examiner who evaluated

16   the IQ scores in 1988 (AR 237), to a 2001 record that notes "has hx of retardation" (AR 227),

17   and to a record from 1954 stating "mental-psychological testing revealed 'immaturity'" (AR

18   203), to support that she had cognitive impairments from birth. Otherwise, none of the

19   medical evidence cited in plaintiff's brief refers to her condition prior to attaining age 22.

20   Therefore, plaintiff may have had an impairment prior to age 22, but there is substantial

21   evidence in the record, particularly from the reviewing DSHS physicians, to support the ALJ's

22   conclusion that there is insufficient evidence for a medical expert to reasonably infer the onset

01    of a *severe* impairment at that time.

02            In sum, because substantial evidence supports the ALJ's decision that a medical expert

03    would not have sufficient evidence to reasonably infer onset of a severe impairment prior to age

04    22, the ALJ did not err in failing to call a medical expert.

05                                          Non-Medical Evidence

06            Building on his above-quoted statements regarding the testimony and other lay

07    evidence concerning plaintiff's emotional difficulties and special education prior to age 22, the

08    ALJ reasoned:

09            The burden of proving that one was disabled prior to the date that he or she was
               last insured, or otherwise eligible for benefits, cannot be met merely by means of
10            conclusory self-serving testimony that one was disabled at the crucial time.
               …
11
               This introductory provision [from listing 12.00 (mental disorders)] emphasizes
12            and reiterates that there must be evidence from an acceptable medical source
               showing that there is a medically determinable mental impairment.   Such
13            evidence consists of "all relevant and available medical evidence about your
               mental impairment(s), including its history, and any records of mental status
14            examinations, psychological testing, and hospitalizations and treatment."   Lay
               testimony alone cannot be used to establish an onset date, as the Social Security
15            Act requires objective medical documentation and remote testimony is
               inherently untrustworthy, due to the passage of time alone, particularly in a
16            secondary gain context, without any objective support.

17            With specific reference to the lay testimony I note that…the Court, evincing
               appropriate regard for the legislative intent and the statutory scheme, noted that
18            "lay testimony…is not the equivalent of 'medically acceptable…diagnostic
               techniques' that are ordinarily relied upon to establish a disability," and that
19            "(t)he ALJ properly discounted lay testimony that conflicted with the available
               medical evidence."
20            …

21            I conclude that the lay testimony in this case cannot establish disability.   As the
               trier of fact in this matter, I find that the subjective elements of proof offered in
22            this case, even with lay corroboration of activities and behavior, cannot carry

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -11

01         claimant's burden of proof of disability.

02    (AR 18-21; internal citations omitted.)

03         Plaintiff argues that the ALJ erred in discrediting lay testimony as not supported by the

04    medical record (Dkt. 10 at 6), and in concluding, without providing specific reasons germane to

05    each witness, that lay testimony did not "establish disability" (*Id.* at 9).   She again references

06    SSR 83-20 to argue that the ALJ can use lay testimony to determine onset date, and that the lay

07    evidence establishes the onset of severe impairments before age 22.

08         The Ninth Circuit has held that "lay testimony as to a claimant's symptoms is competent

09    evidence that an ALJ must take into account, unless he or she expressly determines to disregard

10    such testimony and gives reasons germane to each witness for doing so."   *Lewis v. Apfel*, 236

11    F.3d 503, 511 (9th Cir. 2001).   And as discussed above, SSR 83-20 does state the value of lay

12    testimony in determining age of onset when medical evidence is scarce:

13         If reasonable inferences about the progression of the impairment cannot be
           made on the basis of the evidence in file and additional relevant medical
14         evidence is not available, it may be necessary to explore other sources of
           documentation. Information may be obtained from family members, friends,
15         and former employers to ascertain why medical evidence is not available for the
           pertinent period and to furnish additional evidence regarding the course of the
16         individual's condition.

17         On the other hand, as the Commissioner argues, symptoms (defined in SSR 96-4p as

18    "an individual's own perception or description of the impact of his or her physical or mental

19    impairment(s)") are not sufficient to establish a medically determinable impairment.   *Ukolov*

20    *v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir. 2005).   Instead, a "'physical or mental impairment'

21    is one that 'results from anatomical, physiological, or psychological abnormalities *which are*

22    *demonstrable by medically acceptable clinical and laboratory diagnostic techniques*.'"  *Id.* at

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -12

01   1004-05 (quoting 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)) (emphasis in original).   Consistent

02   with the statutory scheme, SSR 83-20 also states that there must be convincing rationale and a

03   legitimate medical basis for the age of onset conclusion:

04   > In determining the date of onset of disability, the date alleged by the individual
05   > should be used if it is consistent with all the evidence available. When the
06   > medical or work evidence is not consistent with the allegation, additional
     > development may be needed to reconcile the discrepancy. However, the
     > established onset date must be fixed based on the facts and can never be
     > inconsistent with the medical evidence of record.
07   > …

08   > How long the disease may be determined to have existed at a disabling level of
09   > severity depends on an informed judgment of the facts in the particular case.
     > This judgment, however, must have a legitimate medical basis.
10   > …

11   > The impact of lay evidence on the decision of onset will be limited to the degree
     > it is not contrary to the medical evidence of record.
12   > …

13   > The onset date should be set on the date when it is most reasonable to conclude from the
     > evidence that the impairment was sufficiently severe to prevent the individual from
     > engaging in SGA (or gainful activity) for a continuous period of at least 12 months or
14   > result in death. Convincing rationale must be given for the date selected.

15         As already discussed, there is substantial evidence to support the ALJ's conclusion that

16   there is insufficient evidence to establish a severe impairment prior to age 22.   The ALJ may

17   have used a fairly broad brush in discrediting lay testimony as not supported by the medical

18   record, and in concluding lay testimony did not establish disability, but the germane reasoning

19   provided applies equally: the medical evidence, as well as plaintiff's educational and work

20   history, do not support a finding of a severe impairment prior to age 22, and plaintiff cannot

21   overcome this finding and meet her burden with unsubstantiated non-medical evidence.   *See*

22   20 C.F.R. § 404.1529.   Therefore, plaintiff fails to demonstrate error in the ALJ's assessment

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -13

01  of the lay evidence.

02  <u>**CONCLUSION**</u>

03      For the reasons set forth above, this matter is AFFIRMED.

04      DATED this <u>12th</u> day of March, 2010.

05

06  _____
    Mary Alice Theiler

07  United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -14